Filed 7/9/25  In re D.G. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D.G., a Person Coming Under the Juvenile Court Law. | B340857 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.G.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP04279E) |

APPEAL from order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Conditionally reversed and remanded with directions.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Antonia G. (Mother) appeals from the order terminating her parental rights to minor D.G. She contends both the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to satisfy the initial inquiry requirements under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code,[1] § 224 et seq.). Father is not a party to this appeal.

We agree with Mother and conditionally reverse and remand with directions to the juvenile court and DCFS to complete its ICWA inquiry as to D.G.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *Petition and Detention*

On August 14, 2020, DCFS filed a petition on behalf of three-year-old D.G. and his four siblings—16-year-old T.G., 12-year-old K.G., eight-year-old J.G., and seven-year-old C.G.[2]—pursuant to section 300, subdivisions (a) and (b)(1), after receiving a referral alleging general neglect of the children who were left in the care of paternal grandfather and paternal grandmother. The children's 18-year-old sibling Daniel also lived in the home of paternal grandparents. The petition includes an "Indian Child Inquiry Attachment"—Judicial Council form ICWA-010(A)—which states the children have "no known Indian ancestry."

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Only D.G. is the subject minor of this appeal; his siblings are mentioned as relevant to the recitation of facts.

On August 13, 2020, Father denied Native American Indian ancestry during a telephone call with the children's social worker (CSW). On August 19, 2020, Mother and Father each filed a Parental Notification of Indian Status—Judicial Council form ICWA-020—and marked the box indicating "no Indian ancestry as far as I know."

At the August 19, 2020 detention hearing, the juvenile court found that both "Mother, Father indicated no American Indian heritage. This is not an Indian case." The court "does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep [DCFS], their Attorney and the court aware of any new information relating to possible ICWA status."

## II.    *Jurisdiction and Disposition*

On August 24, 2020, Mother told the dependency investigator that maternal grandmother (MGM) said her family has American Indian heritage. Mother did not provide any contact information for MGM. The investigator was able to locate a phone number for MGM and attempted to contact MGM twice, on September 3 and 21, 2020. There was no answer by MGM and the investigator left voicemail messages.

Adjudication took place on September 24, 2020. The juvenile court sustained the petition on behalf of the children, with minor amendments by interlineation. The court declared D.G. and his siblings dependents of the court, ordered them removed them from both parents' custody, and ordered DCFS to provide reunification services. Mother's case plan required individual counseling, conjoint counseling with minors, parenting classes, a domestic violence support group, and 10 random or on-demand drug tests.

3

On November 13, 2020, paternal grandmother reported "no Native American ancestry."

III.   *Section 366.21 Status Review Proceedings*

At the six-month review hearing held March 25, 2021, the juvenile court found D.G.'s placement with foster parent Mary A. necessary and ordered DCFS to complete the steps to finalize permanent placement.

At the 12-month review hearing held September 30, 2021, the juvenile court found the continued placement of D.G. in the home of Mary A. necessary and designated her as D.G.'s educational rights holder.

At the 18-month review hearing on February 7, 2022, the juvenile court found the parents had not complied with the case plan and terminated reunification services. The court set the matter for a section 366.26 hearing to select and implement a permanent plan of adoption.

IV.   *Section 366.26 Permanency Planning Proceedings*

At the permanency planning review hearing held August 1, 2022, the juvenile court ordered DCFS to "follow up with an ICWA inquiry to the parents and maternal/paternal relatives and update the court in the next report, giving notice to any tribes, bands, BIA, or Department of the Interior that needs to be notified."

At the November 21, 2022 review hearing, the juvenile court again ordered DCFS to follow up with relatives for possible Indian American ancestry.

In the status review report filed March 1, 2023, DCFS notified the court that on January 11, 2023, the CSW attempted

4

to contact MGM at her last known phone number and received notice the "server is temporarily . . . disconnected."

On March 20, 2023, the juvenile court again ordered DCFS to inquire as to ICWA issues of parents and relatives and to send "notices to the tribes, if needed."

In the status review report filed June 9, 2023, the CSW reported both paternal grandparents denied Indian ancestry.

On March 14, 2024, the juvenile court held the section 366.26 hearing and ordered adoption as the permanent plan for D.G. with Mary A. named prospective parent. The juvenile court further found "no ICWA on all four" children.

According to the status report filed July 2, 2024, the CSW verified MGM's address in the city of Pomona with Mother. The CSW then sent MGM, via certified mail, notice of the upcoming section 366.26 hearing for D.G. On July 11, 2024, Mother appeared at the hearing and indicated she learned about it from MGM, who called Mother after receiving a hearing notice via mail.

At the section 366.26 hearing held August 19, 2024, the juvenile court terminated parental rights over D.G, found D.G. "adoptable," and designated Mary A. the prospective adoptive parent.

Mother filed a timely notice of appeal.

## DISCUSSION

I.    *Applicable Law and Standard of Review*

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the

5

placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128–1129 (*Dezi C.*), quoting 25 U.S.C. § 1902.) Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a), (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The phase at issue here is the initial duty to inquire.

The duty to inquire whether a child is an Indian child begins with the initial contact, i.e., when the referring party reports child abuse or neglect that triggers DCFS's investigation. (§ 224.2, subd. (b)(1), (2).) DCFS's initial duty to inquire includes asking the child, parents, legal guardian, *extended family members*, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.*, subd. (b)(2).) Extended family members include "a person who has reached 18 years of age and who is [the child's] grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1); 25 U.S.C. § 1903(2).)

Similarly, the juvenile court's duty to inquire "begins at the first hearing on a petition"; at the first appearance of each party or interested person, the juvenile court must inquire whether they "know or have reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Parties are to notify "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

We review the juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312; *Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) If our review reveals error resulting in an inadequate initial ICWA inquiry, then we must order "conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court], rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.*, at p. 1136.)

II. *Initial ICWA Inquiry Inadequate, Warranting Conditional Reversal*

First, Mother contends DCFS "failed to make adequate inquiry whether D.G. is or may be an Indian child." She argues nothing in the record reflects that 18-year-old brother Daniel, 16-year-old brother T.G, and 12-year-old sister K.G were not asked about their ancestry or whether they had any contact information for their maternal grandmother.

We find no ICWA inquiry was required of T.G. and K.G., who were 16 and 12, respectively. However, the record shows no ICWA interview of D.G.'s then 18-year-old sibling Daniel who had resided in the home of paternal grandparents since

7

commencement of the proceedings in 2020. (See § 224.1, subd. (c)(1) [extended family members must have "reached 18 years of age" and include the child's "brother or sister"].) This, in of itself, demonstrates DCFS did not adequately comply with initial inquiry requirements as to possible Indian ancestry for D.G.

While the juvenile court initially found at the August 19, 2020 detention hearing that this is "not an Indian case" based on the parents' ICWA-020 forms, it ordered the parents to notify if there was "any new information relating to possible ICWA status." Mother did just that a few days later, on August 24, 2020, when she notified the investigator that MGM stated her family has American Indian heritage. The reports provide that the investigator called MGM twice in September 2020. Nevertheless, the record does not reflect any attempt by DCFS to verify MGM's telephone number with Mother, Daniel, or paternal grandparents. Nor does the record reference any attempt by DCFS to ascertain or discover whether they knew MGM's residence and/or mailing address.

The record shows no other action taken by DCFS to reach out to MGM for the next 28 months, despite the juvenile court's follow-up orders. It was not until January 11, 2023 when the CSW attempted to contact MGM's last known phone number and received notice the "server is temporarily . . . disconnected." DCFS notified the juvenile court of the disconnected number via its status review report filed March 1, 2023. The juvenile court again ordered DCFS to "inquire as to ICWA issues of parents and relatives." In the status report filed June 9, 2023, the CSW confirmed that both paternal grandparents had denied Native

8

American ancestry, but there is no record that DCFS requested MGM's contact information during those contacts.

Significantly, the July 2, 2024 status report provides the CSW verified MGM's address with Mother on May 23, 2024, and sent MGM, via certified mail, notice of the upcoming section 366.26 hearing for D.G.  Mother appeared before the court on July 11, 2024 and stated on the record that she learned about the hearing date from MGM, who received DCFS's notice of the hearing via mail.  Despite this confirmed method of communication/contact with MGM, the record shows DCFS did not attempt to make contact with MGM, either in person or by certified mail to ascertain possible Native American ancestry. (See § 224.1, subd. (c)(1); 25 U.S.C. § 1903(2) [extended family members include "a person who . . . is [the child's] grandparent," inter alia].)  Certainly, an inquiry letter could have been sent along with the notice sent by certified mail, requesting that MGM call the CSW to verify Indian ancestry.  Given the fact that Mother had reported on August 24, 2020 that MGM stated she has American Indian ancestry, greater diligence should have been exercised in trying to get in touch with MGM.

DCFS must conduct a reasonable inquiry and document its efforts and results to enable the juvenile court to determine whether DCFS's efforts are sufficient to satisfy the mandates of ICWA and related California law.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 604.)  DCFS's inquiry "must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*Ibid*.)  We find DCFS's failure to ask MGM and Daniel about possible Indian ancestry, especially when DCFS was in contact with them during the underlying proceedings, violated the

9

express mandate of section 224.2, subdivision (b).  (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1138–1140.)

Mother also contends the juvenile court failed to comply with its duty to ensure that DCFS adequately investigated D.G.'s possible Indian ancestry.  DCFS, on the other hand, argues "[o]n these facts, the juvenile court had ample evidence to find the inquiry of the reasonably available relatives was adequate and sufficient to support the finding that ICWA did not apply."

We agree with Mother.  Substantial evidence does not support the juvenile court's finding that ICWA did not apply, in that the inquiry requirements related to D.G.'s Indian heritage have not been met.  The juvenile court ultimately accepted DCFS's incomplete inquiry (§ 224.2, subd. (b)) despite its earlier orders to DCFS for updated ICWA inquiries and follow-ups.  (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 555 [juvenile court had a duty "to ensure the Department adequately investigated the children's possible Indian ancestry through [Mother's] side of the family"].)  Here, the juvenile court erred in failing to ensure DCFS satisfied its duty of inquiry before finding ICWA did not apply to the proceedings.  (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 320.)

*In re K.R.* (2018) 20 Cal.App.5th 701 is instructive.  There the reviewing court found the juvenile court did "not inquire as to what efforts [DCFS] had made to contact the paternal grandfather or the paternal great-grandparents" and accordingly found that the juvenile court "failed in its duty to ensure compliance with ICWA."  (*Id.* at p. 709.)  Similarly, here, the juvenile court should have followed up with DCFS as to its efforts.  "[T]he court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot

10

simply sign off on the notices as legally adequate without doing so." (*Ibid.*)

## DISPOSITION

The order terminating parental rights to D.G. is conditionally reversed and remanded with directions that the juvenile court order DCFS to inquire of MGM, Daniel, and any extended maternal relatives as to D.G.'s Indian heritage under ICWA and related California law. After initial inquiry has been made, the juvenile court shall make ICWA findings at a noticed hearing. If the juvenile court finds ICWA inapplicable, it shall reinstate its August 19, 2024 order terminating parental rights. If the juvenile court concludes ICWA does apply, then it shall proceed in conformity with ICWA and related California law. (25 U.S.C., § 1912, subd. (a); §§ 224.2, subd. (i)(1), 224.3 & 224.4.) Nothing in this disposition precludes the juvenile court from ordering additional inquiry of others having an interest in the child.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

VIRAMONTES, J.        MATTHEWS, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11